UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| KAREN FOELSCH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 5:17-cv-06148 |
| | ) | |
| FIRST UNUM LIFE INSURANCE COMPANY, | ) | |
|     Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Karen Foelsch, and for her claims and causes of action against Defendant, First Unum Life Insurance Company, states:

## PARTIES

1. Karen Foelsch ("Foelsch") is and at all relevant times has been a resident of the state of Missouri.

2. First Unum Life Insurance Company ("Unum") an out of state insurance company authorized to do business in the State of Missouri.

## JURISDICTION AND VENUE

3. Foelsch brings her claim pursuant to 29 U.S.C. § 1001 et. seq. This dispute is governed by a welfare benefits plan and its associated policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132 (e)(1).

4. Additionally, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the [. . .] laws [. . .] of the United States." 28 U.S.C. § 1331.

5. Venue lies in the Western District of Missouri, as the breach occurred in this judicial district. 29 U.S.C. § 1132(e)(2).

6. Venue lies in the Western District of Missouri also because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district. 28 U.S.C. § 1391(b).

## INFORMATION REGARDING TRIAL

7. No jury trial is allowed under ERISA law.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. Vocational Information

8. At all times relevant, Pearson Inc. ("Pearson") employed Foelsch.

9. Pearson employed Foelsch as a salaried employee.

10. Foelsch worked as Pearson's Head of Assessment Quality Assurance.

11. Foelsch's occupation involved a wide range of both exertional and non-exertional tasks.

### B. Plan & Policy Information

12. Pearson employees were eligible for LTD benefits through its welfare benefits plan ("the Plan").

13. The Plan offered to Pearson employees other welfare benefits that are not material to this action.

14. Pearson was the administrator of the Plan.

15. The Plan constitutes an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1).

16. Pearson delegated to Unum its fiduciary responsibility of rendering benefit determinations for the Plan; Unum underwrote the Plan.

17. Unum's group insurance policy, number 457913 001 ("the Policy"), funded the Plan.

18. At all times relevant, Foelsch has been a beneficiary and covered person under the terms of the Plan and the Policy.

19. The Policy articulates the criteria that an insured Pearson employee must satisfy to qualify for and to receive LTD benefits.

20. To meet the Policy's definition of disabled, an employee must be limited from performing the material and substantial duties of her regular occupation due to sickness or injury, and she must have experienced a 20% loss or more in her monthly indexed earnings due to the same sickness or injury.

21. However, after 24 months, the Policy's definition of disabled requires that due to a sickness or injury an employee must be unable to perform the duties of any gainful occupation for which she is reasonably fitted by education, training, or experience.

22. The Policy provides monthly LTD benefits at a rate of 60% of the employee's monthly predisability earnings.

**C. Medical & Claim Information**

23. On or about December 2, 2015, in anticipation of an upcoming surgery, Foelsch initiated with Unum a disability claim.

24. On December 11, 2015, before underdoing surgery, Foelsch attended work for the final time.

25. On December 15, 2015, treating physician Dr. Craig Satterlee performed surgery on Foelsch's left shoulder. The surgery was designed to repair her rotator cuff, to remove a subacromial spur, and to address arthritis to arthritis in the acromioclavicular joint.

26. Following this surgery, Foelsch's medical conditions rendered her incapable of performing the duties of her own occupation as Head of Assessment Quality Assurance.

27. Foelsch became disabled due to the effects of fibrosis, scarring, adhesive capsulitis, left shoulder pain, tissue damage, reduced range of motion in her left shoulder, and other

3

residual effects from shoulder surgery.

28. Following her December 15, 2015 surgery, Foelsch regularly attended physical therapy and continued to receive treatment from Dr. Satterlee.

29. Following the Policy's 180 day waiting period, Foelsch timely and properly submitted to Unum her claim for LTD benefits.

30. On June 28, 2016, Unum approved Foelsch's claim, finding that she was incapable of performing her own occupation.

31. Throughout 2016, Foelsch continued routine physical therapy and ongoing treatment with Dr. Satterlee.

32. Despite physical therapy and other treatment, Foelsch's impairments and limitations did not resolve or improve sufficiently to allow her return to work.

33. From June 2016 through October 2016, Unum paid Foelsch LTD benefits.

34. On October 21, 2016, Unum terminated Foelsch's LTD benefits. Unum did so via written decision ("initial denial letter").

35. Unum alleged in its initial denial letter that Foelsch was capable of performing her own occupation.

36. Unum's initial denial letter referenced treatment notes from June, July, and August 2016. These treatment notes documented Foelsh's medical appointments.

37. Unum's initial denial letter cited three treatment notes purportedly describing Foelsch's improvements. These notes pertained to a June 27, 2016 evaluation and MRI interpretation; a July 15, 2016 account of Foelsch's ability to perform household chores and recreation; and an August 4, 2016 measurement of Foelsch's shoulder elevation.

38. Unum's initial denial letter did not account for more recent medical evidence

4

demonstrating that Foelsch's condition had not resolved or improved. For example, an October 3, 2016 treatment note detailing Foelsch's reduced and inadequate range of motion, reduced strength, and continued need for physical therapy.

39. Unum's initial denial letter incorrectly characterized her occupation as a Quality Assurance Engineer.

40. Unum also alleged that Dr. Satterlee failed to respond to its September 30, 2016 request for his opinion regarding Foelsch's impairments and limitations.

41. On or about October 24, 2016, Dr. Satterlee submitted to Unum findings regarding Foelsch's impairments and limitations. The limitations noted by Dr. Satterlee precluded Foelsch from performing her occupation.

42. On October 28, 2016, Unum wrote to Foelsch, advising that Dr. Satterlee's findings did not change its October 21, 2016 initial denial.

43. On January 13, 2017, Dr. Satterlee performed Foelsch's left shoulder arthroscopic extensive debridement.

44. On January 23, 2017, Foelsch requested her claim file and advised Unum of her intent to appeal its initial denial.

45. On April 26, 2017, Foelsch timely filed an appeal of Unum's decision terminating benefits.

46. On May 26, May 30, June 13, and June 14, 2017, Foelsch submitted additional appeal evidence to Unum.

47. Foelsch's appeal contained additional medical records, physical therapy treatment notes, treating physician opinion statements, and an independent physician statement. This medical evidence indicated that Foelsch's impairments and limitations precluded her

5

Case 5:17-cv-06148-GAF   Document 1   Filed 12/15/17   Page 5 of 10

from performing her own occupation.

48. Foelsch's appeal also contained a vocational report identifying errors in Unum's decision-making regarding the characterization and demands of her occupation. This report explained that Foelsch's occupation was more physically demanding than Unum had found in its initial denial letter.

49. On June 15, 2017, Unum advised Foelsch that it expected to issue a determination by July 29, 2017.

50. On July 28, 2017, Unum denied Foelsch's appeal, upholding October 21, 2016 decision terminating benefits. Unum did so via a written decision ("final denial letter").

51. Foelsch has exhausted her administrative remedies.

52. Although Unum acknowledged its misclassification of Foelsch's occupation, its final denial letter concluded that she was capable of performing her occupation.

53. At no time did Unum request that Foelsch attend an independent medical examination.

54. Unum's final denial letter referenced two sources of pharmaceutical records. Unum advised Foelsch that she could obtain these records from Milliman IntelliScript ("IntelliScript") and MedPoint Compliance, Optum ("MedPoint").

55. On August 9, 2017, Foelsch requested from IntelliScript and MedPoint the pharmaceutical records referenced in Unum's final denial letter.

56. On August 10, 2017, IntelliScript provided Foelsch with a copy of her prescription history. Presumably, this prescription history was one of the two pharmaceutical records that Unum referenced in its final denial letter.

57. IntelliScript's pharmaceutical records pertained to Foelsch's prescription history from July 2010 to December 2011. Those records were not relevant to the conditions,

impairments, or limitations underlying the LTD claim that gave rise to this action.

58. On August 21, 2017, Foelsch received additional prescription drug information from the ScriptCheck Customer Response Team. The correspondence's letterhead indicates that ExamOne – MedPoint's successor – fulfilled the request. Presumably, this prescription history was the second of two pharmaceutical records that Unum referenced in its final denial letter.

59. The pharmaceutical records provided by ExamOne/MedPoint pertained to Foelsch's prescription history from August 2010 to December 2011. Those records were not relevant to the conditions, impairments, or limitations underlying the LTD claim that gave rise to this action.

60. On August 23, 2017, Foelsch submitted to Unum the pharmaceutical records that IntelliScript and MedPoint provided, requesting that Unum include these documents in its claim file.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132 (a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

61. Foelsch realleges paragraphs 1-60 as if fully set forth herein.

62. Foelsch is entitled to all unpaid and accrued LTD benefits, as Unum has:

   a. Made an unfavorable decision without substantial evidence;

   b. Mischaracterized Foelsch's complaints, abilities, and functional limitations;

   c. Failed to properly develop, consider, and assess medical evidence;

   d. Mischaracterized medical records and opinions;

   e. Mischaracterized Foelsch's occupation and duties required of her occupation; and

   f. Issued an unfavorable decision that was arbitrary and capricious.

7

63. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Foelsch is entitled to an award of actual damages for losses suffered. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

64. Since October 21, 2016, Unum has not satisfied its obligation to pay Foelsch LTD benefits.

WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B), 29 U.S.C. § 1132(g), and 29 U.S.C. § 1132(a)(3)(B), Foelsch prays for judgment against Unum for unpaid benefits, attorney's fees, costs, and interest, together with any further relief the Court deems just.

## COUNT II
## 29 U.S.C. § 1132 (a)(3) – BREACH OF FIDUCIARY DUTY

65. Foelsch realleges paragraphs 1-64 as if fully set forth herein.

66. 29 U.S.C. § 1002(21)(A) defines a fiduciary as one who:

> "[. . .] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

67. Unum, as the administrator of claims and payor of benefits, is a fiduciary.

68. Foelsch participated in and benefitted from the plan as previously indicated.

69. A "higher than marketplace" quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343 (2008), applies in evaluating Unum's actions as a fiduciary.

70. Unum breached its fiduciary duty in the several ways. On or about September 30, 2016, Unum requested Dr. Satterlee's opinion regarding Foelsch's impairments and limitations. On October 21, 2016, less than 30 days later, it issued its initial denial letter. Unum made

its decision in part because it had not received a response to its recent request to Dr. Satterlee. However, Unum's October 26, 2016 receipt of Dr. Satterlee's findings had no effect on Foelsch's claim – despite Dr. Satterlee's findings of limitations preventing her from performing her own occupation.

71. Additionally, Unum based its final denial letter in part on Foelsch's alleged failure to satisfy certain eligibility criteria. However, Unum neither raised this argument in its original denial letter, nor did it put Foelsch on notice of this argument prior to issuing its final denial letter. As a result, Unum deprived Foelsch of the opportunity to evaluate and respond to a determinative issue.

72. Moreover, Unum did not act in accord with its duties of competence and loyalty in its initial denial letter's inaccurate characterization of Foelsch's occupation.

73. Furthermore, in seeking Foelsch's pharmaceutical records and prescription history from a period of time that was irrelevant to her claim, Unum improperly investigated Foelsch's medical history with the predetermined purpose of terminating benefits.

74. In failing to discharge its duties solely in the interests of the participants and beneficiaries of the plan, Unum breached its fiduciary duty.

WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1109, and 29 U.S.C. § 1132(a)(2), Foelsch prays for a declaratory judgment finding that Unum violated its fiduciary duty; for an order enjoining Unum from requiring Foelsch to submit to any independent medical or vocational evaluations, as such examinations would be intended to find her not disabled; and for further relief as the Court deems necessary and just.

## COUNT III
## 29 C.F.R. § 2560.503-1 – PROCEDURAL NONCOMPLIANCE

75. Foelsch realleges paragraphs 1-74 as if fully set forth herein.

76. ERISA imposes on claims administrators the duty to establish and maintain reasonable claims procedures. 29 C.F.R. § 2560.503-1(b).

77. 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h) afford Foelsch the right to a full and fair review on appeal.

78. Foelsch has been harmed by Unum's failure to provide Foelsch with a description of the information necessary to perfect the claim and an explanation of why the information is necessary. 29 C.F.R. § 2560.503-1(g)(1).

79. These failures afford Foelsch the right to pursue any remedy under Section 502(a) of ERISA, including to 29 U.S.C. § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

WHEREFORE, Unum's failure to comply with decision and its process subject its decision to a *de novo* standard of review.

Respectfully submitted,

BURNETT & DRISKILL, Attorneys

By: /s/ Roger M. Driskill
Roger M. Driskill, # 24709
19 North Water Street
Liberty, MO 64068
P: 816.781.4836
F: 816.792.3634
rmdriskill@burnettanddriskill.com

*/s/* Kyle H. Sciolaro
Kyle H. Sciolaro, #24991
19 North Water Street
Liberty, Missouri 64068
P: (816) 781-4836
F: (816) 792-3634
ksciolaro@burnettanddriskill.com

ATTORNEYS FOR PLAINTIFF